Good morning, everyone. We have six arguments on this morning's calendar, and we'll begin with Appeal No. 21-1320, 1327-3124? Sorry, I meant 133ß1 representative Motley of the California Post Office yesterday. Yes, whenever you're ready. Good morning, Your Honors, and may it please the Court. My name is Madison Howison, and I represent Plaintiff Appellant Terrence Prude. Defendant Apolline Mellie was the Security Director of Wapun Correctional Institution, where Mr. Prude was an inmate and a rather successful jailhouse lawyer. On the false premise that Mr. Prude posed a security threat, Director Mellie began reading Mr. Prude's mail. And after more than a year of reading his mail, he discovered that Mr. Prude was expecting to receive $10,000 in funds from a friend who had recently been successful in his own civil rights lawsuit. Mr. Prude decided to punish—sorry, Director Mellie decided to punish Mr. Prude, seized the funds, ordered them sent to the State General Fund as contraband, and the hearing that occurred thereafter was merely a sham. Mr. Prude asked this Court to reverse the Western District Court of Wisconsin's grant of summary judgment in favor of the offending officer and to find in Mr. Prude's favor. In the alternative, Mr. Prude asks this Court to reverse and remand for trial for two main reasons. First, weighing of the evidence, credibility determinations, and impermissible inferences plagued the trial court's summary judgment order, where a reasonable jury could have concluded, based on the record evidence, that Director Mellie violated Mr. Prude's constitutional due process rights. And second, Your Honors, Director Mellie knowingly violated Mr. Prude's due process rights, and for that reason he is not entitled to qualified immunity. One aspect of your due process claim was the argument that he had the right to present evidence at the hearing, but there's a letter he claims wasn't put in and a couple of other things. I didn't see those items in the record, and as you know, we can do a harmless error analysis there. Can you provide any insight into how he was prejudiced with respect to this evidence when it's not in the record and there's no real description of the materiality of it to his claims? I know you have other aspects, so I want you just to focus, please, on the failure to present evidence aspect of the claim. Yes, Your Honor. As you mentioned, Director Mellie did decide that Mr. Prude could not present certain evidence to the hearing officer. Under this court's ruling in Piggy v. Cotton, Mr. Prude was entitled to present his evidence to an impartial decision maker. But you agree there's also a materiality of it, an element. Yes, Your Honor, and one of the things that Mr. Prude wanted to present was the corrections complaint examiner's report, which showed that in a prior case in 2014, Director Mellie as the charging officer had also decided which evidence the inmate in that case could present to the disciplinary hearing. When the CCE examiner conducted its investigation, it decided that Director Mellie should not have been the person to make that decision and found that it was not harmless error. Mr. Prude also had other documentary evidence that he did not, that he was not able to offer before the hearing that tended to show that Director Mellie did, in fact, make misstatements in his report, in his conduct report. Can you be more specific on what you're talking about and what it says? Because I don't, I'm having a hard time appreciating what the materiality of that evidence could have been in light of what's not in the record. We understand that concern, Your Honor, but I think most importantly here is the fact that Director Mellie, as the charging officer, was not allowed to make the decision as to what evidence Mr. Prude— But that's a separate claim. That goes to the unbiased decision maker. This is just the pure failure to be able to put in evidence, and so you need to be able to establish that that evidence that Mellie didn't allow him to put in had some materiality to his due process claim, and that's what I'm struggling with. Yes, Your Honor, and Mr. Prude did not present that evidence to the trial court, so unfortunately that evidence is not in the record, and I don't have that evidence either on appeal. Okay, thank you. You're welcome. To the first point, the trial court has one task at summary judgment, and that is to decide whether there is a genuine dispute of material fact based on the record. Beyond construing the evidence in the light most favorable to the non-movement, Mr. Prude in this case, the trial court is to resist the temptation to decide which party's version of the facts it finds more likely, as this court stated in Payne v. Pauley. That's exactly what the trial court did in this situation. It gave into that temptation. Mr. Prude proceeded on the basis that Director Mellie, as the constant decision maker throughout this case, violated his due process rights, and as the Supreme Court stated in Wolfe v. McDonald, before an inmate is finally deprived of their property interest, some kind of hearing is owed, and although Mr. Prude, as an inmate, was not entitled to the full penalty of rights as would be a criminal defendant, at minimum, this court decided in Piggy v. Cotton that he was entitled to advanced written notice of the charges against him, the opportunity to present testimony and documentary evidence to an impartial decision maker, and a written explanation for the discipline supported by some evidence in the record. This court also decided in Redding that the officer who conducts the investigation and lobbies the charges against the inmate may not act as a decision maker in the case. Mr. Prude presented evidence to the trial court that that's exactly what Director Mellie did. Mr. Prude presented evidence that prior to any hearing whatsoever in violation of Wolfe, Director Mellie seized Mr. Prude's funds and ordered them sent to the State General Fund. Now, defendants' apologies are likely to argue that just because they were sent to the State General Fund doesn't necessarily mean that he was permanently dispossessed of those funds. However, Your Honors, Section 303.092 of the Wisconsin DOC policies specifically reserves the State General Fund for funds that are deemed contraband. No other provision provides for sending such funds to the State General Fund just to be held. That is evidence that Director Mellie himself made the decision that these funds were contraband. But Mr. Prude offered other evidence to the trial court. Director Mellie told Mr. Prude, regardless of what happens at the disciplinary hearing, you will not get your money back. And an information request that Mr. Prude sent to Ms. Camphouse, the Walpug business manager, asked, is it true that Mellie authorized my funds to go to the State General Fund regardless of what Captain Wester decides at my disciplinary hearing? On your claim that the check was confiscated initially, and again, I'm trying to separate this from your claim of an impartial decision maker, Mr. Prude did get a hearing on that. So why wouldn't that hearing satisfy the due process that he's entitled to in the prison setting? Again, setting aside the fact, your allegations and claim that the hearing itself was problematic, your separate claim of the improper confiscation of the check initially. Well, I don't think that they can be separated, Your Honor, because the whole point is that Director Mellie was the charging officer, and therefore, by this court's decision in Reading, he was prohibited from making decisions about Mr. Prude's punishment. But he decided that he was- It surprises me that you're, and I'm surprised at this in the briefs, too. It surprises me that you start with Mellie, and you're so focused on Mellie. Why not start with Westra? Well, Your Honor, Mr. Prude did raise a claim against Captain Westra in the lower court as well. But the lower court, although it accepted Mr. Prude's supplemental complaint, it denied reinstatement of Captain Westra as a defendant. Sure, and the reason was because the district court, the magistrate judge thought it was delayed, right? Yes, Your Honor. There was undue delay in seeking the reinstatement of the claim against Captain Westra? That's what the trial court said, Your Honor, although at the same time that Mr. Prude filed his supplemental complaint, the court allowed him to proceed on a different theory against Director Mellie. He filed this motion to reinstate a mere 18 days later, when there were still more than 100 days before the dispositive motions deadline. The court could have allowed him to proceed, but the court- Was Westra's name in the original supplemental amended complaint that the court did allow to proceed? Yes, Your Honor, it was. Okay. And in that complaint, Mr. Prude did clearly state a cause of action against Captain Westra, but again- Right, right, and that's why, to my eye, and maybe you'll tell me I'm wrong, the claim against Westra, I don't see any delay at all. The claim against Westra, at least as alleged, seems pretty strong based upon Westra's own statements. Yes, Your Honor, absolutely. And it seems that you can use Westra's own statements, at least in part, the hearsay issue gets a little delicate, to bolster the claim against Mellie. Am I thinking about that in the right way? Yes, Your Honor, absolutely correct, and that is why, in the brief, Mr. Prude argued that Captain Westra should have been reinstated as a defendant, because not only was his timing, was it not untimely to ask for reinstatement of Captain Westra, but also he did state a claim, and had Captain Westra been reinstated, he could have proceeded on claims against Captain Westra, and also would have bolstered his claim against Director Mellie. If the claim should have been allowed to proceed against Captain Westra, on the question of qualified immunity, what's your strongest argument that the law is clearly established as to Westra? Well, Your Honor, the Supreme Court in Wolf v. McDonald, and this court's decisions, as you know, in Piggy v. Cotton and in Redding, clearly established that Mr. Prude had the right to an impartial decision maker. Those cases have been around for decades. And although defendants at Belize may argue that there are no cases where these facts are exactly the same, the Supreme Court stated in Hope v. Pelzer that although a case that has fundamentally similar or materially similar facts may provide strong support for the conclusion that a right was clearly established, such is not necessary. And in fact, in Hope v. Pelzer, the court looked to not only state law, but it also looked to a report by the DOJ. And here we have Wisconsin DOC policies that indicate that it's improper for a partial decision maker to sit on the panel. But can we look at state court policies or state Department of Correction policies to assess a constitutional violation? According to the court in Hope v. Pelzer, they looked to several different pieces of evidence to come to that conclusion. So I think your point with Hope is that some constitutional violations may be obvious, right? So tying a prisoner to a hitching post for an extended period of time in the blazing sun is an obvious Eighth Amendment violation. And the Supreme Court said the same thing in Taylor v. Riojas with respect to leaving a prisoner in his own sewage for an extended period of time, right? The point here is that it's an obvious constitutional violation for a decision maker to be biased. Yes, Your Honor. And how do you make that argument and distinguish this from arguing that the law is established at too high a level of generality? It's not too high a level of generality. I mean, Piggy v. Cotton speaks for itself that the inmate has the right to present evidence to an impartial decision maker. I mean, I don't think that it gets much clearer than that, that the decision maker has to be impartial. They can't be influenced by their own bias and they can't be improperly influenced by anyone else. As this court stated in Redding, circumstances other than those arising out of the disciplinary proceeding itself may raise doubts about the impartiality of the members and the integrity of the process itself. Thus, when the trial court decided that although it could infer that Director Melley had an outcome in mind that he wished to impose, at the end of the day, Captain Wester was the actual decision maker, that was incorrect. Because under this court's decision in Redding, it doesn't matter whether Director Melley or Captain Wester was the actual decision maker. What matters is whether there were circumstances that cast doubt on the integrity of the process and on the impartiality of both Director Melley and Captain Wester. Your Honors, Mr. Prude also presented evidence that Captain Wester was improperly influenced by Director Melley. To that effect, Mr. Prude presented evidence that Captain Wester imposed the exact same sentence that Director Melley had previously offered as an uncontested disposition. He also offered evidence that before the hearing ever even started, Captain Wester said, my hands are tied with respect to the 180-day disciplinary separation and $10,000 seizures and funds. And at some point during the hearing said, you already know what the punishment is, which is what Director Melley previously offered you. You can appeal to the warden as I'm sure you will. Counsel, those statements would come in as party admissions, statements of party opponent if Wester were a party to this case. But assuming that Wester, for current purposes, is not a party to this case, right? And the district court looked at those statements and said, you know, they're inadmissible hearsay. And so what would your response be to that particular ruling? Well, my response is two-part, Your Honor. In the first hand, the court didn't even make an assessment as to whether these statements were actually hearsay. It didn't determine whether they were statements made to prove the truth of the matter asserted therein. Mr. Prude wasn't attempting to prove that Captain Wester's hands were actually tied, that some Wisconsin DOC policy or something tied his hands to implementing this. It was to show that Captain Wester at least felt bound by the influence Melley had over him. But in the briefs, at least in the summary judgment briefs, right, the plaintiff did not raise that particular argument before the district court, right? It was only in the, I think it was in the motion, the memorandum of support of motion reconsideration that he raised that issue. And so the, typically, you know, when someone raises an issue in a motion of reconsideration that was not previously raised in the actual motion, we would, a district court might consider that argument to have been waived, right? Because in a motion of reconsideration, you can't really raise new arguments that weren't fully developed in the original motion. Was there something peculiar about the way this issue came up in this instance that would allow us to look at the argument in the motion for reconsideration? Yes, Your Honor. And that fact is that Mr. Prude is a pro se litigant. And therefore, he is entitled to have his pleadings and his filings construed liberally by the trial court. And because he was a pro se litigant, the trial court should have considered in the first instance when defendants' appellees said that this statement was hearsay. Does that same way that we look at pleadings at the 12B6 stage apply at the summary judgment stage for factual submissions? Well, Your Honor, this, the decision as to whether it was hearsay. The liberal construction argument. Does that apply at summary judgment when reviewing 56.1 statements? Yes, Your Honor. For pro se litigants, the court should always construe their pleadings liberally because, again, they're pro se. And it seems to be here, too, that the, looking at the briefs on the motion for summary judgment, that defendants raised the hearsay objection in the reply in support of motion for summary judgment. And in certain districts, a non-movement then would have an opportunity to address any arguments that were freshly raised in the reply. Do you know whether this particular district had such a standing rule? I don't, Your Honor. I see that I've run into my rebuttal time. May I briefly conclude? Sure. And you can reserve, you want to reserve the remaining two minutes? Yeah, I'll reserve the remaining two minutes. Okay. Let's do that. Thank you. Thank you. Good morning. Good morning. Wisconsin Assistant Attorney General Carla Keecaver appearing on behalf of defendants at police, Anthony Melle and Gary Boutin. This court should affirm the district court's decision on the due process claim for four independent reasons. First, Mr. Prude cannot establish a protected liberty or property interest, so he wasn't entitled to due process protections in the first instance. Second, even if he could establish a protected interest, he had adequate pre- and post-deprivation process. Fourth, there's, third, there's no legal or factual support for the claim that Mr. Melle interfered with Mr. Prude's right to an impartial decision maker. And finally, even if there were, Melle would be entitled to qualified immunity because there's no controlling case clearly establishing such a violation. The only due process claim that Mr. Prude has advanced on appeal is his claim that Melle denied him access to an impartial decision maker. And stepping back a little bit, Mr. Prude cannot establish either prong of a due process violation. He has no protected liberty interest because he lost no good time as a result of his disciplinary level of a liberty interest. He also had no protected. In the district court, I believe you conceded there was a protected property interest for purposes of summary judgment. How can you contest that now? We had a limited waiver of that prong of the, um, of the claim. So how can you contest that now? As the appellee, we can raise alternative grounds for affirmance, and we directly. Can you raise an alternative ground that you waived by not raising before the district court? We, we assumed for the purposes of summary judgment that there was a property interest and then moved on to the second prong of the due process analysis. And we. So my question is, how can you now on that first prong when you conceded it below and didn't give Mr. Prude the opportunity to address it below, raise it for the first time before us? We did. We, we responded in our answer, we denied that he had a property interest and we're not required to raise. That's a separate question though. For purposes of summary judgment, which is one of the issues on appeal before us today, you conceded, again, solely for the purpose of the summary judgment motion below, that there was a protected interest. You are now coming before us when the summary judgment ruling is on appeal, challenging whether or not there's a protected property interest. And my question to you is, how can you do that when below you conceded it? Your Honor, I would argue that as the appellees, we can raise it as an alternative ground in direct response to argument for the, that was made for the first time as a full throated argument here. And what do you do when they dispute it? What do we do? It's a purely legal argument. It's been fully briefed by the parties and there's no, there's no facts in dispute as to the property interest. So it's a, it's an appropriate alternative ground for affirmance. And by that, do you mean that, that he's conceded it's contraband? He has not conceded that it's contraband. I mean that, that's in dispute, but in terms of whether property coming into the institution that is deemed contraband or that is suspected contraband, that there's no property interest in that. See, that's the part. Can you, can you make that point and leave out the word contraband? I'm not sure. In other words, I think that, tell me, tell me I'm wrong, but I think Mr. Prude is going to say, hold on, I'm not agreeing it's contraband. I think I was entitled to it and I think I was lawfully entitled to it. That's right. He has that belief, but it's, it's just a wish. It's, it's not that this, this check coming into the institution was his property and that he had a property interest. How can we say that as a matter of law for the first time on appeal? We reserved it in, as. You might, you might want to move on to your other, other points. All right. Well, we, as I said, we had a strong argument on the second prong of the due process analysis, which is that. So can you go to, let's start. Let's talk about what Mr. Westra, Captain Westra. I don't understand how there's any delay whatsoever. That seems to be very weak, that there's a delay in seeking to reinstate the claim against Captain Westra. And when you look at, at least at what Mr. Prude sweared to be true, that Westra stated, you know, you know, my hands are tied, et cetera, with respect to the 180 days in disciplinary segregation. Why isn't that enough, at least to plead a, a procedural due process violation, unfair hearing officer claim? Well, a couple of points here. And first with regard to the timeliness, this claim was made a year after the complaint was initially screened. And those statements that Mr. Prude alleged Westra made. But the moment the complaint is reinstated against Mellie, I don't see how the magistrate judge could not, or how the magistrate judge could find delay vis-a-vis Westra. There was no claim against Westra. I mean, I know we're moving on to the futility prong, but there was no claim against Westra in that motion to reinstate. But it was the exact same factual basis that was used in the motion to reinstate Westra. And the court allowed it a mere three weeks before the motion to reinstate. So how could that be untimely? In the, the first three motions for reconsideration that Prude filed, he never asked to reinstate Westra. And then once the court. That wasn't the question though. The question was, the motion to reinstate Westra that is on appeal today is based on the factual allegations that were developed during discovery that were allowed to proceed as the basis of the claim against Mellie just a mere three weeks before. So how could it be untimely to try to bring in Westra three weeks later? It's not that Mr. Prude didn't know that Westra was the hearing officer. He knew back when he filed his initial complaint that Westra was the hearing officer. And that his theory was that Mellie somehow influenced Westra. And he would have known that, that Westra made these statements. He was seeking to reinstate an amended or a complaint, correct? He's unclear. He did file an amended complaint with his third motion for reconsideration. But the court did not. It doesn't appear that the court treated it that way. It appears that it was treated as a motion for reconsideration of the screening order. And that third motion is the one that had these new statements, newly discovered statements of Captain Westra. Right. And so I guess the question becomes, once the district court allowed the claim on which those statements are based, which was only three weeks before the motion to add Westra back into the case, it was only then that the district court recognized that this claim might have some legs that allege that Westra and Mellie were more or less in cahoots or that Mellie, you know, incorrectly influenced Westra and that Westra conceded or agreed to proceed along those lines. And so then Mr. Prude finally gets the judge's okay to say, okay, well, you can state that claim. And then 18 days later, he says, oh, judge, you know, sorry, I'd like to add Westra back in. So at least it seems to me that that's the chronology that took place. You know, the judge ended up ruling on the motion months and months later, but we can't hold that against Mr. Prude. And I would agree with that. It's that Mr. Prude should have raised a claim, his motion to reinstate Westra in his first three motions for reconsideration, certainly in that third one that was ultimately granted. He never did. And the court- But it was only three weeks after that third one. How could that be untimely? That's correct. And I agree- And some re-judgments had not been filed. I absolutely agree. Those three weeks weren't untimely. It was that he didn't raise it all the way along when he filed his very first motion to reinstate Mellie. The two claims were inextricably tied together. So assume for purposes of argument, we disagree with you on delay. Okay? I know that's not the outcome you want, but just assume that. Okay. Now focus on Captain Westra's statements. Why are they deficient? Well, first of all, they were hearsay. No, no, no. Not as to him. I'm focused on the plaintiff's desire to add Captain Westra as a defendant. So assuming these were omissions by a party opponent- Correct. They're not hearsay. Well, first of all, the district court did consider the statements, even though over the hearsay- Don't worry about the district court. Just focus on what the statements are. The statements, there's no evidence anywhere in the record of communication between Mellie and Westra, either before the hearing or during this hearing. Just hold on. Hold on. Hold on. Just focus on Westra. Just Westra. Forget Mellie. Westra says, according to the plaintiff's sworn declaration, right? I mean, you've read it. I have it. I have. Okay. You know my hands are tied on the 180 days of disciplinary segregation and the seized 10,000 that I have to give you. My hands are tied, meaning the outcome is preordained here. Why isn't that enough, at least for pleading purposes, to state the claim? Forget Mellie. Captain Westra, as the actual hearing officer, was entitled to a presumption of impartiality. These statements were presented in the final motion for reconsideration. If a trial judge said that to a defendant in a civil action before the civil bench trial began, do you have any doubt at all that there would be a claim for bias? Well, I think it would be a different standard if we're talking about a criminal trial, certainly. We're talking about the 14, we're talking about the due process clause? Well, I think we disagree about what type of process, if any, Mr. Prude was entitled to at these disciplinary hearings, which I'll answer your question first and then can loop back to that. But as to the actual statements, the court, there was a declaration, several declarations submitted by Captain Westra explaining, he claimed he didn't make these statements, but he explained- But this has to be viewed in the light most favorable to Mr. Prude. Why wouldn't the statement that Judge Scudder just read be enough? And you add on top that Mr. Prude alleged that Captain Westra said, you really must have pissed Mailey off. You already know what the sentence is, which is the same sentence Mailey offered you. Why wouldn't those allegations be sufficient when viewed in the light most favorable to Mr. Prude to rebut any potential presumption of being a fair decision maker that Captain Westra may have? Well, given that Westra stated in his declaration that he would have been informed of the informal disposition, and that's not evidence of bias- But that's asking us to weigh the facts. Look at just what Mr. Prude alleged, as we have to do at the 12B6 stage. Right. In other words, if Mr. Prude made a false statement in that declaration, in other words, it turns out to be a lie, you can seek to prosecute him, right? He's made a sworn false statement, but that's not what we're measuring. Right now, we have to take the statement by its terms. Or the jury can determine that, and it's a credibility determination. The jury may disagree and think he's lying, but that's not the standard for 12B6. It's just not a reasonable inference to make from the allegation. Really? Based on what Captain Westra stated in his declaration. Forget Captain Westra. You have to take his statement and read it in the light most favorable to him. So your argument would somehow have to be that his statement, you know my hands are not, it cannot be fairly read as a statement of bias. What's the argument? I would argue again that when you have a declaration from the actual hearing officer stating- Why isn't that weighing the evidence? If you're asking us to look at what the actual hearing officer said in contrast to what Mr. Prude said. Again, we're at the 12B6 stage. Your answer is basically, Captain Westra is more believable at the pleading stage than Mr. Prude. And why would we even get to Captain Westra's declaration at the pleading stage? We're not at summary judgment on that. And again, I would just point out though that- Why would we even get to Captain Westra's declaration at the motion to dismiss stage? I think part of this is the procedural posture of this case. There was a full summary judgment briefing done. I understand, but this particular issue as to whether or not Captain Westra should be added to the complaint, that was not part of the summary judgment because Westra wasn't a defendant. What's on appeal is whether or not Mr. Prude's motion to reinstate Westra should have been granted. And you're arguing that the statement about my hands are tied. We have to look at that and draw an inference based on Captain Westra's declaration that was submitted. How could we possibly do that at the 12B6 motion to dismiss stage when we look just at the allegations in the complaint? I guess if you're isolating it in that way and just ignoring the procedural posture of the case, that's true. What are we ignoring about the procedural posture? This is a separate question than the summary judgment motion. So if I'm missing something, let me know. What are we ignoring about the procedural posture of the case on the issue before us about whether or not Westra should have been added? I think when the court analyzed futility, which is in essence what we're talking about here, the court looked at the claims were tied together. This was not a freestanding claim against Westra. How can you analyze futility at a 12B6 stage based on evidence presented from the defendant? That's not the futility test for 12B6. Well then putting aside the evidence presented on summary judgment, there still was this tied to the claim against security director Mellie and there were a number of problems with that claim. The only prude in his claim was characterized Mellie as the puppet master and the de facto hearing officer and that the hearing was out of Westra's control. So these allegations of statements that Westra made had to have been read in that context and all of the defenses that security director Mellie had would have applied equally to Captain Westra. Ms. Huckabee, let me ask you this. There's a line of cases that talk about the presumption that a hearing officer in this context is impartial or neutral, right? How, what does the law say about whether and to what extent that presumption should be applied at the 12B6 stage versus the summary judgment stage? In other words, does that presumption apply when we're looking at a motion to dismiss or does it only apply when we're weighing the evidence at the summary judgment stage or at trial? I think it does apply at the motion to dismiss stage. And how, but how so? Because, and I think this is kind of, it seems to me kind of the nut of the problem, right? How so given the fact that 12B6 stage, we're supposed to construe, you know, the facts and all the allegations to be true and construe all reasonable inferences in the plaintiff's or the plaintiff's, well, the plaintiff's favor. So how would the presumption apply in that context? Well, I think there still is a fairly high bar and the plaintiff would have to make allegations. That, that show that, or that plead, sufficiently plead that the presumption has been overcome. And at the 12B6 stage, I think that's a question of, some question of law then of whether or not the allegations and all reasonable inferences have been drawn in the plaintiff's favor has or has not overcome that presumption. Yes. And I think too, it's important to look again at the elements of the due process claim. Even putting aside the liberty or property interest, there, there also is the prong of the process due. And here, if, assuming that Prude was entitled to due process at his, at a disciplinary hearing. Let me ask you a hypothetical. Hypothetical. Okay. Suppose Captain Wester has said, my hands are tied, I took a bribe. Due process problem? Probably, yes. Why? I mean, at the pleading stage. If we're talking about at the pleading stage here. Fine. Pleading. Why? Articulate the reason why. That seems like a much more obvious point. And again, if we're putting aside all of the summary judgment briefing and discussion. Obvious as to what? Obvious that, that he is admitting that he, he is an impartial decision maker. Okay. And why is that a due process problem? I agree with you, it is. The question is why? Well, because it's, it is admitting that it's a due process, that it's a, he's an impart, he's a biased decision maker. Okay. So a biased decision maker, even in this, the context that we're in here, even in the can give rise to a 14th amendment procedural due process violation, a biased decision maker. That's, that's the legal proposition we take away from that hypothetical, correct? It is. And I would just argue that that is only in certain circumstances when there is a, a liberty or property interest at stake. So if there's a liberty interest at stake and the wolf and piggy process is what's due, then there is a requirement that there be a neutral decision maker. Same for if. All right, we're past that. We're past the legal interest, right? We talked about that 10 minutes ago. So on that, on those hypothetical facts, there'd be a due process problem. And then if you go back to what Judge St. Eve is saying, you have to take the sworn declaration in the light most favorable to the plaintiff. Why isn't that a fair inference? That I, at my hearing, I had an impartial hearing officer. My hands are tied. The only thing not there is, is something, you know, I took a bribe or something akin to that. I think the statements are ambiguous. Even putting aside the summary judgment, the Westra's declaration, putting that aside, if you look at the administrative code and the requirements of the code. What's the ambiguity? I don't understand the ambiguity because he, he follows that up with the portion that, that Captain Westra pulled him aside and said, you really must have pissed off Mellie. So, it's, there's linkage there. My hands are tied, ellipses, you must have really pissed off Mellie. It's all linked. There is no allegation that Mellie had any communication with Westra during the hearing, before the hearing. There's just no, we're talking just about allegations. Why wouldn't that be a reasonable inference to draw from the fact that he is saying, my hands are tied, you must have really pissed off Mellie. Why couldn't you draw the reasonable inference from that, that Mellie told Westra, this is what you're doing? Well, just because he angered Westra, that's not necessarily, that's not a reasonable inference that, that Mellie somehow influenced Westra's decision and, and forced him to make a certain decision. And the other points in that statement. But Mellie, we're, we're omitting a lot. That's what I worry about. Because Mellie, according to the plaintiff, Mellie also indicated, Mellie told the plaintiff that he could guarantee him that the hearing officer, turned out to be Westra, won't return the funds to you or the lawyer who mailed it. Could guarantee. So we take, we take all of that, the collective, in the light most favorable to the plaintiff. Why isn't that enough? And just add on top of there, that Mellie is Westra's boss. Well, professional relationships at, in a prison are not evidence of bias. I mean, Mellie is all. Not alone. I agree. That's why I said add it on top. As for Mellie's statement, again, he, that's a dispute of fact as to whether he said that. And for Mellie, we're not taking the pleadings as true. You know, these are, these are, as for him, it's, you know, that summary judgment has, was briefed. And so there, his statements are not taken as true. And there has to be proof. Separating these two claims out is a very difficult task, given the procedural posture of this case. And I would just point out that if Mr. Prude felt that his hearing was, was not neutral, he had adequate additional post-deprivation remedies by way of the prison administrative process, state law, common law certiorari, and then actions, tort actions in state court for return of the property. Okay. Very well. Thank you. Thank you. As Your Honor, St. Eve stated, viewing all the record evidence cumulatively in this case, a reasonable jury could have concluded that Director Mellie violated Mr. Prude's constitutional process due, due process rights. And also at the motion to dismiss stage, which Your Honor is focused on, the court could have found that not only did Mr. Prude state a claim against Director Mellie, but also that he stated a claim against Captain Westra. Defendants at Belize Council got one thing right, and that was that these two men, Director Mellie and Captain Westra, and their conduct is so intertwined that in this case, when the trial court allowed Mr. Prude to proceed against Director Mellie as a biased decision maker, it should have also allowed Mr. Prude to proceed against Captain Westra as a biased decision maker. In fact, the trial court stated that viewing Captain Westra's hands-tied statement, it could support an inference that Director Mellie, who was the charging officer, acted inappropriately when he directed Westra, and that Captain Westra merely followed Director Mellie's orders. If that was enough, the hands-tied comment was enough to proceed against Director Mellie, it should have been enough to proceed against Captain Westra himself. Now, Your Honor, Defendants at Belize Council was also looking for the smoking gun, which was the piece where Director Mellie directly communicated with Captain Westra. That's the same smoking gun that the trial court was looking for at summary judgment. But summary judgment merely requires a genuine dispute of material fact from which a reasonable jury could conclude that his rights were violated. No smoking gun was required. And it's for those reasons, Your Honor, that Mr. Prude asks this court to reinstate Captain Westra as a defendant, reverse the trial court, and remand this case for trial. Thank you. Thanks to you. Thanks to both parties. Ms. Howison, a special thanks to you and your firm for accepting the case on appointment by the court. We appreciate it. Appreciate the submissions of both parties, and we'll take the case under advisement.